Ellie Mae **BLAKELEY**, Plaintiff,

v.

**UNITED CABLE SYSTEM**, Amcore Financial, Inc., D/B/A Amcore Consumer Finance Company, Inc., and Dow Financial, Defendants.

No. CIV.A.4:99CV121LN.

United States District Court,
S.D. Mississippi,
Eastern Division.

June 22, 2000.

Stanford Young, Waynesboro, MS, for Plaintiff.

Silas W. McCharen, Carol Ann Estes, Daniel, Coker, Horton & Bell, Jackson, MS, Brooks R. Buchanan, Lee Davis Thames, J. Collins Wohner, Jr., Butler, Snow, O'Mara, Stevens & Cannada, Jackson, MS, T.H. Freeland, III, Freeland & Freeland, Oxford, MS, for Defendants.

### MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of plaintiff Ellie Mae Blakeley to remand pursuant to 28 U.S.C. § 1447. Defendants Amcore Consumer Finance Company, Inc. and Amcore Financial, Inc. (the Amcore defendants)[1], joined by defendant Dow Electronics,[2] have responded in opposition to the motion. The court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that plaintiff's motion to remand is due to be granted for reasons which the court will herein undertake to explain.

According to the allegations of plaintiff's complaint, which she filed in the Circuit Court of Wayne County, Mississippi, plaintiff, in response to certain advertisements by defendants, communicated with agents for defendants and purchased a wireless cable television system, known also as a "Home Satellite System," executing a pur-

---

1. These defendants state that they were incorrectly named in the complaint as "Amcore Financial, Inc. d/b/a Amcore Consumer Finance Company."

2. Whereas plaintiffs have named "Dow Financial" as a defendant, Dow Financial, as explained in an affidavit submitted by defendants, is merely a division of Dow Electronics, Inc., and is not a separate legal entity.

chase agreement for the system. Plaintiff alleges that in connection with her purchase of this satellite system, defendants "told [her] that her monthly payment for the purchase of the [system], with programming, would pay for the system within three (3) years"; that she was "led to believe that she would pay a regular monthly payment without the addition of interest"; and that defendants at no time "revealed or disclosed [to plaintiff] that the purchase of the [system] was an 'open-end credit card transaction' in which the purchase price would be financed with the defendant, Amcore Consumer Finance Company, Inc." According to the complaint, "[t]he credit transaction unknowingly entered into by the Plaintiff resulted in little or no principal debt reduction on the initial Satellite purchase price [inasmuch as] [t]he regular monthly payment was allocated to pay interest and finance charges only." She alleges that as a result, the balance owed now approaches or exceeds the original amount financed, notwithstanding that she has made regular monthly payments on the transaction over a period of time. Based on these allegations, and specifically on her claim that defendants both affirmatively misrepresented the transaction and failed to disclose the true nature of the transaction as an open-end credit card transaction, plaintiff purported to set forth ten claims for relief in her complaint, including *inter alia*, for negligence, breach and tortious breach of contract, breach of the duty of good faith and fair dealing and economic duress.[3]

**3.** Plaintiff asserted the following claims (some of which are not causes of action but rather describe the relief plaintiff seeks) in her complaint.

*Count One–Breach of the Duty of Good Faith and Fair Dealing:*
Defendants did not take appropriate measures to inform her in a manner that she could understand, of the true nature of the open-end credit transaction;

*Count Two–Economic Duress:*
Defendants were able to obtain unfair advantage over her through the adhesive and deceptive nature of the open-end credit transaction.

*Count Three–Negligence:*
Defendants breached their duty of care by failing to disclose and define all material information relative to the open-end credit transaction when they knew such information was critical to plaintiff's being able properly protect her interest; by misrepresenting material facts to the plaintiff which they knew were false and upon which she relied; by misrepresenting that the monthly payment would result in payoff; and by charging an exorbitant interest rate and by allowing the fraudulently induced minimum monthly payment to cover only accrued finance charges.

*Count Four–Intentional, Gross and Negligent Infliction of Emotional Distress and Mental Anguish:*
Defendants failed to adequately define material contract provisions and failed to disclose and/or intentionally misrepresented material information to plaintiff, including the perpetual nature of the consumer transaction in order that she might take appropriate steps to protect her rights under the contract.

*Count Five–Constructive Fraud:*
Defendants occupied a fiduciary and confidential relationship with plaintiff, which they breached by fraudulently informing, or failing to inform, plaintiff of the perpetual nature of the consumer credit transaction and intentionally misrepresented and/or failed to disclose material information relative to the credit card contract and thereafter charged an exorbitant interest rate.

*Count Six–Breach of Contract and Tortious Breach of Contract:*
Defendants breached and/or tortiously breached their contract with plaintiff in some unspecified way.

*Count Seven–Recission and Cancellation:*
Plaintiff claims entitlement to recission and cancellation of the agreement.

*Count Eight–Violation of the Mississippi Unfair or Deceptive Acts and Practices Act:*
Defendants' actions constitute a violation of the Mississippi Unfair or Deceptive Acts and Practices Act, Miss.Code Ann. § 75–24–3 *et seq.*

*Count Nine–Injunction Prohibiting Enforcement:*
Plaintiff seeks to enjoin defendants from enforcing the contract and to require defendants to remove any negative reporting concerning her to any credit bureau or credit agency.

*Count Ten–Injunction Prohibiting Future Transactions:*
Plaintiff seeks an injunction prohibiting defendants from using the transactions or scheme identified in the complaint at any time in the future in the State of Mississippi.

Within thirty days of service of the complaint, the Amcore defendants, joined by Dow Electronics, removed the case to this court on the basis of diversity jurisdiction under 28 U.S.C. § 1332, and bankruptcy removal jurisdiction as set forth in 28 U.S.C. § 1334. Plaintiff timely moved to remand, asserting on the diversity front that while the parties are of diverse citizenship, the amount in controversy does not exceed $75,000 so that there is no diversity jurisdiction, and contending, with reference to defendants' allegations of bankruptcy jurisdiction, first, that Dow Electronics, the party that was in bankruptcy, is not a defendant in this case and that in any event, even were the case properly removed on the basis of bankruptcy removal jurisdiction, remand should be ordered on the basis of mandatory abstention, discretionary abstention and/or equitable remand.

In their response to plaintiff's motion to remand, defendants conceded that since plaintiff had agreed, post-removal, to irrevocably stipulate that she will never seek or accept any amount in excess of $75,000, then the requirements of diversity jurisdiction are not satisfied. They maintained, however, that jurisdiction is nevertheless proper in this court on either or both of two bases, first, because plaintiff's claims, though nominally pled as state-law claims, actually "arise under" federal law, and specifically the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*, and second, because the court has bankruptcy removal jurisdiction, which it must and/or should exercise.

As plaintiff points out, while defendants did assert that this case was removable pursuant to 28 U.S.C. § 1334, the bankruptcy removal statute, they did not purport to remove the case on the basis of federal question jurisdiction under 28 U.S.C. § 1331 and instead, first asserted TILA-based federal question jurisdiction in response to plaintiff's motion to remand. Plaintiff thus insists that defendants' assertion of this additional basis for jurisdiction was untimely and that the court may not properly exercise jurisdiction on this basis.

■■■ The court agrees that defendants failed to timely assert federal question jurisdiction as a basis for removal. Under 28 U.S.C. § 1441, a defendant may remove a case from state to federal court if federal jurisdiction exists. To effect removal, the defendant must file in the district court "a notice of removal ... containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant." 28 U.S.C. § 1446(a). The notice of removal must be filed within thirty days after a defendant receives or is served with a copy of the state court complaint, or within thirty days of his receipt of some "other paper" from which the removability of the case is first ascertainable. 28 U.S.C. § 1446(b).

■ Within the thirty-day period prescribed by § 1446(b), a defendant may freely amend its notice of removal. And the majority of courts have recognized—at least in more recent times—that even after expiration of this thirty-day period, a defendant may still be allowed to amend its removal petition in order to cure defective allegations of jurisdiction. *See, e.g., D.J. McDuffie, Inc. v. Old Reliable Fire Ins. Co.*, 608 F.2d 145, 146 (5th Cir.1979) (holding that amendment of removal petition was properly allowed to correct jurisdictional allegations in removal petition which were defective or faulty due to defendants' failure to specifically allege the citizenship of the parties at the time the suit was brought and at the time the removal petition was filed; missing allegation was not a fatal omission which could not be cured by amendment). The authorization for such amendments derives from 28 U.S.C. § 1653, which states that "defective allegations of jurisdiction may be amended ... in the trial and appellate courts." Thus, where a defendant, for example, has alleged the existence of diversity jurisdiction in its removal petition but has failed to allege all of the specific facts, or has incor-

rectly alleged some of the facts underlying its jurisdictional conclusion, courts have allowed amendments to cure these deficiencies. *See, e.g., FHC Options, Inc. v. Security Life Ins. Co. of America*, 993 F.Supp. 378, 382 (E.D.Va.1998) (amendment allowed where defendant incorrectly pled its own citizenship). However, the courts that have addressed the issue have uniformly recognized that a defendant's ability to amend the removal petition *after* the thirty-day time limit for removal prescribed by § 1446 extends only to "amendments to correct 'technical defects' in the jurisdictional allegations in the notice of removal," and that amendments to remedy a "a substantive defect in the [removal] petition", i.e., to add a new basis for federal jurisdiction, are not permitted. *See, e.g., Briarpatch Ltd. v. Pate*, 81 F.Supp.2d 509, 516–17 (S.D.N.Y.2000) ("[f]ailure to assert federal question jurisdiction as a basis for removal is a substantive defect" which defendant may not cure by amendment after expiration of thirty-day time limit of § 1446(b)); *Stein v. Sprint Communications Co.*, 968 F.Supp. 371, 374 (N.D.Ill.1997) ("[A] defendant may not amend its notice of removal after the 30–day limit in § 1446(b) to remedy a substantive defect in the petition"); *Wright v. Combined Ins. Co. of America*, 959 F.Supp. 356, 359 (N.D.Miss.1997) ("If a defendant seeks to amend the notice of removal at any time thereafter, he may only do so to clarify the jurisdictional grounds for removal, which were unartfully stated in the original notice. He may not allege new jurisdictional grounds for removal."); *Spillers v. Tillman*, 959 F.Supp. 364, 372 (S.D.Miss.1997) ("Although a defendant is free to amend a notice of removal within the 30–day period set forth in 28 U.S.C. § 1446(b), once the 30–day period has expired, amendment is not available to cure a substantive defect

in removal proceedings."); *Lowes v. Cal Dive Int'l, Inc.*, No. 97–407, 1997 WL 178825 (E.D.La.1997) (recognizing that "[w]hile defendants may freely amend their notice of removal within thirty days of service, they may not add new grounds for removal after the thirty day period has expired"); *Iwag v. Geisel Compania Maritima*, 882 F.Supp. 597, 601 (S.D.Tex.1995) (observing that "[s]ection 1653 does not allow the removing party to assert additional grounds of jurisdiction not included in the original pleading," and thus holding that court would "disallow amendments to notices of removal that present grounds for removal not included in the original notice"); Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3733, at 358–61 (3d ed. 1998) ("[T]he notice may be amended only to set out more specifically the grounds for removal that already have been stated, albeit imperfectly, in the original notice ... Completely new grounds for removal jurisdiction may not be added....").[4]

 In the case at bar, despite their rather disingenuous suggestion otherwise, defendants cannot reasonably be said to have raised federal question jurisdiction as a basis for jurisdiction in their notice of removal; rather, they alleged only diversity jurisdiction and bankruptcy removal jurisdiction. Defendants nevertheless argue that they should be relieved of their failure to timely assert federal question jurisdiction based on equitable considerations, and specifically, based on plaintiff's having undertaken, via artful pleading, to "conceal" the true federal nature of her claim in an effort to deceive and mislead defendants. Defendants argue, that is, that because plaintiff's artful pleading was a fraudulent means calculated to manipu-

---

4. The writers caution that "([t]he party seeking removal should take care to identify all possible bases of federal subject matter jurisdiction over the suit in its notice of removal because the district court may decline to assert jurisdiction over the case for reasons not averred in the removal notice and deny the removing party leave to amend its notice to include further grounds of federal subject matter jurisdiction after the expiration of the relevant time period."). 14C C. Wright, A. Arthur, E. Cooper, *Federal Practice and Procedure*, § 3732 (Supp.2000).

late the forum, plaintiff should be estopped to assert that her complaint was an "[initial pleading setting forth [a] claim for relief]" under TILA in order to invoke the thirty-day time limit of § 1446(b). Defendants offer no authority in support of their position in this regard, and this court is aware of none. Furthermore, a plaintiff desirous of avoiding a federal forum is generally permitted to forego available federal claims and rely exclusively on state law in order to stay in state court, unless her putative state law claims are either completely preempted by federal law or it appears that some substantial, disputed question of federal law is a necessary element of at least one of her state law claims. *See Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 13, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). And in any event, in this case, as defendants themselves recognize in their surrebuttal memorandum, "[t]he jurisdictional facts on this issue is [sic] Plaintiff's allegations in the complaint itself, and that has been part of the record all along." The court thus rejects defendants' argument on this point.

Defendants argue alternatively that even if TILA must be disregarded as a separate basis for federal question jurisdiction because it was not timely raised, the existence of such jurisdiction is relevant nonetheless to the court's bankruptcy jurisdiction, and is germane in particular in connection with plaintiff's request for equitable remand. While the court might be persuaded by that argument in another case, in the particular circumstances of this case, it is not.

■ Section § 1452 of Title 28, United States Code, states that "a party may remove a claim or cause of action in a civil action ... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." Section 1334(b) states that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." "Thus, this court has subject matter jurisdiction to hear this case removed from state court if the controversy is at least 'related to' a case under Title 11." *Searcy v. Knostman,* 155 B.R. 699, 703 (S.D.Miss. 1993). In the Fifth Circuit, an action is said to be "related to" a case under Title 11 if "the outcome of that proceeding (the state court case) could conceivably have any effect on the estate being administered in bankruptcy." *In re Wood,* 825 F.2d 90, 93 (5th Cir.1987) (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984)).

■ In the case at bar, defendants submit that removal was proper since this case is "related to" the bankruptcy case of Dow Electronics, of which Dow Financial, the defendant named by plaintiff, is merely an unincorporated division.[5] Plaintiff denies that bankruptcy jurisdiction is proper, arguing that in view of the entry of an order of confirmation in Dow Electronics' Chapter 11 bankruptcy case (pursuant to which Dow became responsible to pay a total of only $100,000 to all its unsecured creditors over a period of four years), "it is difficult to see how this action can possibly affect" Dow's bankruptcy proceeding. She has taken the position, in other words, that this post-confirmation suit against Dow is not "related to" the bankruptcy proceeding.[6] However, and regardless of whether this post-confirmation suit against Dow was, in fact, "related to" Dow's bankruptcy

**5.** Plaintiff disputes this assertion, stating that she can find no basis in the record for Amcore's assertion that Dow Financial was ever an unincorporated division of Dow Electronics. In fact, Dow has provided affidavit which plainly explains this.

**6.** Plaintiff has cited no authority in support of her position in this regard, and for their part, defendants have not even acknowledged her assertion of this argument and have not bothered to provide the court with any argument or authority on this issue. In fact, defendants assert that "[p]laintiff has not and cannot plausibly argue that this case is not at least 'related to' Dow's bankruptcy."

case, the court has learned that a final decree has been entered in the bankruptcy case and that the bankruptcy case is now closed. Consequently, there exists no bankruptcy case to which this case now might be said to relate. *Cf. Walnut Assocs. v. Saidel,* 164 B.R. 487, 492 (E.D.Pa. 1994) ("[B]ankruptcy courts retain jurisdiction over the post-confirmation administration of the estate until the entry of a final decree.").

The Fifth Circuit said in *In re Querner,* 7 F.3d 1199, 1201 (5th Cir.1993), that "as a general rule the dismissal or closing of a bankruptcy case should result in the dismissal of related proceedings.... The general rule favors dismissal because the court's jurisdiction over the related proceedings depends upon the nexus between the underlying bankruptcy case and the related proceeding." *Cf. Tschirn v. Secor Bank,* 123 B.R. 215, 218 (although case was "related to" bankruptcy case when removed, court was divested of jurisdiction upon trustee's post-removal abandonment of claim with the result that the claim was no longer part of the debtor's bankruptcy estate and hence was not "related to" his bankruptcy proceeding). While the *In re Querner* court recognized this as the general rule, the court indicated that a bank-

ruptcy court (and hence a federal district court) may retain jurisdiction over matters related to the bankruptcy case even after the underlying bankruptcy is closed in the same kinds of circumstances that a court might retain pendent state claims after federal claims have been dismissed, *id.* at 1202 (citing *In re Carraher,* 971 F.2d 327, 328 (9th Cir.1992), and *In re Smith,* 866 F.2d 576, 580 (3d Cir.1989)). The court further noted that "[t]he Supreme Court has held that a federal district court must consider four factors in deciding whether to retain jurisdiction over pendent state claims after the dismissal of federal claims: economy, convenience, fairness, and comity." *Id.* (citing *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 353, 108 S.Ct. 614, 620–21, 98 L.Ed.2d 720 (1988)).

 Thus, assuming in this case that this court had jurisdiction over the case in the first place because the case was "related to" a bankruptcy case,[7] the question would be whether this court should retain jurisdiction over the case even though the bankruptcy case is now closed. Although the parties have not addressed this issue,[8] it is evident from defendants' arguments on the mandatory abstention, discretionary abstention and equitable remand issues raised by plaintiff that the only reason

7. None of the parties actually provided any authority or even much in the way of argument in support of their position on that issue, and the cases touching this subject are not altogether consistent. *See Back v. LTV Corp.,* 213 B.R. 633, 639 n. 2 (S.D.N.Y.1997) (holding that post-confirmation claims against the debtors themselves have a "conceivable effect" on their estates); *but see In re Poplar Run Five Ltd. Partnership,* 192 B.R. 848, 858 (Bankr.E.D.Va.1995) (holding that "related to" jurisdiction did not reach proceeding, the outcome which would have no impact on the estate's handling or administration since the debtor had a confirmed liquidation plan, stating, "When we confirmed [the debtor's] liquidation plan, the estate ceased to exist and the parties became bound to the plan's provisions."). The court, though, is of the view that when the case was removed, it was "related to" the Dow bankruptcy even the case was filed post-confirmation. *See In re Spiers Graff Spiers,* 190 B.R. 1001, 1006 (Bankr. N.D.Ill.1996) (opining that "the jurisdictional

authority of a bankruptcy judge is sharply reduced following confirmation," and is "retained to a limited extent post-confirmation to ensure that reorganization plans are implemented ... and to protect estate assets devoted to implement the confirmed Plan"); *In re Schwinn Bicycle Co.,* 210 B.R. 747, 755 (Bankr.N.D.Ill.1997) ("jurisdiction lies over certain disputes, even those arising post-confirmation, that may affect a former Chapter 11 debtor's chances of successfully implementing its confirmed plan of reorganization").

8. This court learned that the Dow bankruptcy case had been closed not from the parties but upon its own inquiry of the bankruptcy court, following an investment of the court's time in researching and assessing the merit of the parties' respective positions on the "related to" issue (which the parties failed to address in any detail), and the bankruptcy-based abstention and remand issues raised by plaintiff.

defendants offer in support of this court's exercising jurisdiction over this case (other than its being "related to" a bankruptcy case) is that plaintiff's putative state law claims are really federal claims in disguise, over which this court has federal question jurisdiction. While that argument might

have had impetus on the referenced abstention and equitable remand issues,[9] in the court's opinion, the fact that this court would have had original federal question jurisdiction had the case been brought here originally is not a reason for the court to refuse to remand the case since defen-

9. By virtue of § 1334(c)(2), mandatory abstention is required in certain cases, including removed cases, involving state-law claims for which the sole basis of bankruptcy jurisdiction is "related to" jurisdiction. *See In re Southmark Corp.*, 163 F.3d 925, 929 (5th Cir. 1999). "Under § 1334(c)(2), ... courts must abstain from hearing a state law claim for which there is no independent basis for federal jurisdiction other than § 1334(b) 'if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.'" *In re Gober*, 100 F.3d 1195, 1206 (5th Cir.1996). For mandatory abstention to be invoked, the following conditions must exist:

1. A motion has been timely filed requesting abstention.
2. The cause of action is essentially one that is premised on state law.
3. The proceeding is non-core or related to the bankruptcy case.
4. The proceeding could not otherwise have been commenced in federal court absent the existence of the bankruptcy case.
5. The proceeding has already been commenced and can be timely adjudicated in a state court forum.

*In re McCray*, 209 B.R. 410, 414 (Bankr. N.D.Miss.1997). As these factors indicate, even if defendants did not timely remove the case on the basis of federal question jurisdiction, nevertheless, if, as they contend, the case is not one essentially premised on state law and if the proceeding could have been commenced in federal court absent the existence of the bankruptcy case, then mandatory abstention does not apply.

Even where the court has "related to" jurisdiction under § 1334, it may remand the "claim or cause of action on any equitable ground," 28 U.S.C. § 1452(b), or in the "interest of justice, or in the interest of comity with State courts or respect for State law," the court may abstain from hearing the case, 28 U.S.C. § 1334(c)(1). Factors the court should consider when presented with questions of equitable remand or discretionary abstention include, *inter alia,*

(1) the effect or lack thereof on the efficient administration of the estate if the Court recommends [remand or] abstention;
(2) extent to which state law issues predominate over bankruptcy issues;
(3) difficult or unsettled nature of applicable law;
(4) presence of related proceeding commenced in state court or other nonbankruptcy proceeding;
(5) jurisdictional basis, if any, other than § 1334;
(6) degree of relatedness or remoteness of proceeding to main bankruptcy case;
(7) the substance rather than the form of an asserted core proceeding;
(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
(9) the burden of the bankruptcy court's docket;
(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
(11) the existence of a right to a jury trial;
(12) the presence in the proceeding of non-debtor parties;
(13) comity; and
(14) the possibility of prejudice to other parties in the action.

*Searcy v. Knostman*, 155 B.R. 699, 710 (S.D.Miss.1993). As is seen, a number of these factors relate to the presence, predominance and difficulty of resolving any state law issues, as well as proper respect for the role of state courts in addressing and deciding issues of state law. If, then, as defendants suggest, there really are no substantive state law issues, then despite defendants' failure to remove on the basis of federal question jurisdiction, the absence of state law issues would be a factor bearing on whether the case should be remanded.

Of course, the court's recognition of this should not be taken as an indication that the court would not have remanded the case based on equitable remand or discretionary abstention principles had the bankruptcy case not been closed. On the contrary, the court would have found remand in order, primarily because the court is not persuaded that federal question jurisdiction actually exists. *See infra* note 10.

dants failed to timely remove based on federal question jurisdiction.[10] Accordingly, as there exists no reason, substantial or otherwise, for the court to retain jurisdiction over this case, the case will be remanded to the state court from which it was removed.

It is, therefore, ordered that plaintiff's motion to remand e granted.

---

**10.** Having said all this, the court would note that it is not persuaded in any event that removal on the basis of federal question jurisdiction, even if timely, was proper. Defendants do not contend that plaintiffs' claims are completely preempted by the Truth in Lending Act or any other federal statute, but rather argue that because plaintiff's putative state law claims are in reality federal claims because plaintiff has no viable state law claims and her claim is therefore are necessarily federal. As the court has explained more thoroughly in its opinion entered this date in *Greer v. MAJR Financial Corp.,* No. 3:99CV803LN, —— F.Supp.2d —— (S.D. Miss. June 23, 2000), "federal question jurisdiction cannot properly be found merely because a plaintiff who fails to state a viable claim for relief under state law may have available to him a viable claim for relief based on federal law where he has not elected to assert the federal claim." *Id.* at ——, 2000 WL 1035998, *17 (citing *Campbell v. General Motors Corp.,* 19 F.Supp.2d 1260, 1275–76 (N.D.Ala.1998)). *See also Waste Control Specialists, LLC v. Envirocare of Texas, Inc.,* 199 F.3d 781, 783 (5th Cir.2000), also discussed in *Greer,* in which the Fifth Circuit explained that in the absence of complete preemption, the plaintiff "remained the master of its complaint," *id.* at 784, and therefore, where the plaintiff "could have alleged a federal cause of action in its state petition, [but] did not," and instead "filed a complaint in state court alleging wholly state claims in a non-preempted field[,][i]ts choice [was] entitled to respect and precluded removing the case to federal court...." In this case, plaintiff may not have any viable state law claims; but it is clear not only from her complaint, but also from her responses to defendants' requests for admissions, that she relies solely on state law. It would seem, therefore, that her claims do not "arise under" federal law.