**Leslie GREER and Beulah Greer, Plaintiffs,**

v.

**MAJR FINANCIAL CORPORATION; Mccune and Associates, Inc.; B & M and Associates, Inc.; Hurley State Bank; Interstate Engineering, et al., Defendants.**

**No. CIV. A. 399CV803LN.**

United States District Court, S.D. Mississippi, Jackson Division.

June 22, 2000.

Edward Blackmon, Jr., Blackmon, Blackmon & Evans Canton, Richard H. Taylor, Jackson, Taylor & Martino, Mobile, AL, Marc L. Boutwell, Boutwell Law Office, Lexington, MS, for Plaintiffs.

Fred Krutz, III, Daniel J. Mulholland, Sheila Bossier, Forman, Perry, Watkins, Krutz & Tardy Jackson, MS, David M. Ott, Bryan, Nelson, Randolph and Weathers, Hattiesburg, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of plaintiffs Leslie Greer and Beulah Greer to remand this case to the Circuit Court of Holmes County, Mississippi. Defendants Hurley State Bank and Interstate Engineering separately responded in opposition to plaintiffs' motion. The court has considered the parties' arguments on the motion in the light of the record in the

case and concludes, for reasons which follow, that plaintiffs' motion is due to be granted.

Plaintiffs filed their complaint in state court on October 21, 1999 asserting various state law causes of action relating to defendants' alleged conduct in connection with their solicitation, sale and financing of a vacuum cleaning system to and for plaintiffs. In the recitation of the facts underlying their claims for relief, plaintiffs alleged that in January 1999, Bobby McCune, acting as an agent for "defendants", approached them and persuaded them to purchase a "Tri–Star" Cleaning System (vacuum cleaner) manufactured and distributed by defendant Interstate Engineering. According to the complaint, McCune represented to plaintiffs that the total purchase price for the vacuum cleaner would be $1605, and that plaintiffs would own the vacuum cleaner after making monthly payments of approximately $45 for a certain number of years. He also told them they could cancel the transaction within three days. Plaintiffs state that based on McCune's representations, they agreed to purchase the vacuum cleaner and signed certain documentation to finance the purchase through defendant, Hurley State Bank. Plaintiffs allege that prior to the expiration of three days, they attempted to contact McCune to cancel the transaction "as prescribed by law" and yet he refused to return their calls or to take back the vacuum cleaner and cancel their purchase agreement. Plaintiffs further recite that "had they known the true nature of the financing details relative to this purchase, specifically, that the financing was offered as a revolving credit card account (not a simple interest loan) and only a few dollars of each payment was applied toward the principle [sic] of the purchase price of the TriStar cleaning system, the Plaintiffs would not have entered into said agreement." They charge that McCune's representations "were false and made with the intent to deceive the Plaintiffs, and further, that the Defendants had an obligation to inform them of the entire details concerning financing, particularly the fact

that most of the monies paid from the approximately $45.00 monthly payment would go toward finance charges as opposed to the principle [sic], and that the system would not be paid off in a certain number of years."

Based on these allegations, plaintiffs set forth in their complaint seven state law causes of action. Five of these, as described by plaintiffs in their complaint, are varieties of "civil fraud" under Mississippi law, and include "Reckless and Intentional Misrepresentation"; "Innocent Misrepresentation"; "Willful and Wanton Misrepresentation"; "Deceit"; and "Suppression". Four of these five "civil fraud" claims are premised on McCune's alleged affirmative misrepresentations of "material facts" relating to the details of the financing for the transaction, and one, the cause of action for "suppression", is based on McCune's allegedly having "concealed and withheld material facts from the Plaintiffs that [the] purchase agreement [they executed] was, in fact, a revolving credit card application and that their minimum payments were, in fact, primarily finance charges" and upon defendants' further having "precluded the Plaintiffs from exercising their right to cancel [the] transaction as prescribed by law." In addition to these claims for relief, plaintiffs assert a claim for "Negligence and Wantonness" based broadly on "defendants' " conduct in organizing, implementing and instigating the solicitation, sale and financing of the vacuum cleaner, and a final cause of action for "Conspiracy" by defendants to commit the wrongful acts identified in the other six counts.

Obviously anticipating that defendants might attempt to remove the case to federal court, plaintiffs in their complaint specifically stated as follows:

This is a combination contract, tort, and statutory action brought under the laws of the State of Mississippi, and under the common law of the State of Mississippi. The Plaintiffs herein bring this action based entirely upon the common laws and statutory laws of the State

of Mississippi, and the Plaintiffs herein do not rely upon any federal statute, any federal: question, and do not seek relief under any federal statute or law.

To the extent that the Defendants will contend that the Plaintiffs are seeking relief under federal laws or federal questions, the Plaintiffs expressly deny said contentions, and the Plaintiffs expressly waive any relief under any federal laws or any federal question concerning the allegations of this Complaint, whether said allegations are pled or not.

Despite their assertions in this regard, defendant Hurley State Bank, joined by Interstate Engineering (the only other defendant then served), timely removed the case to this court claiming in the removal petition this court has federal question jurisdiction over plaintiffs' complaint under 28 U.S.C. § 1331, since plaintiffs' complaint, while not expressly alleging a violation of any federal law, effectively charges violations of numerous federal statutes, including the Truth in Lending Act, 15 U.S.C. § 1601 et seq.; the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a et seq.; the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.; the Credit Card Disclosure Act, 15 U.S.C. § 1610, 1637; the Fair Credit Billing Act, 15 U.S.C. § 1666 et seq.; and the National Banking Act, 12 U.S.C. § 85 et seq. Plaintiffs promptly moved to remand, insisting that they clearly have not asserted any claim arising under federal law so that there is no basis for federal jurisdiction.

■ Under 28 U.S.C. § 1441, a defendant has a right to remove from state to federal court any case over which the federal court would have had original jurisdiction. See 28 U.S.C. § 1441(a) [1]; Rivet v.

Regions Bank of Louisiana, 108 F.3d 576, 582 (5th Cir.1997), rev'd on other grounds, 522 U.S. 470, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998) ("As a general proposition, removal hinges on whether a federal district court could have asserted original jurisdiction over the state court action had it initially been filed in federal court."). The district court's original jurisdiction is limited to cases involving diversity jurisdiction pursuant to 28 U.S.C. § 1332, and those involving federal question jurisdiction under 28 U.S.C. § 1331. The latter statute covers disputes "arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. At issue on the present motion is whether any of plaintiffs' claims "arise under the Constitution, laws or treaties of the United States." [2]

■ Whether a claim "arises under" federal law so as to confer federal question jurisdiction under § 1331 is governed by the well-pleaded complaint rule, which "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). Since the well-pleaded complaint rule provides for the determination of jurisdiction solely on the basis of the plaintiff's complaint, the rule makes the plaintiff "master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." Id. at 392, 107 S.Ct. at 2429. Accordingly, even if both federal and state law provide a remedy to the plaintiff, the plaintiff can avoid federal jurisdiction by pleading state law—at the price, of course, of foregoing the federal remedies. Eastern States Health & Welfare Fund v. Philip Morris,

---

1. Section 1441(a) provides in relevant part, as follows:

(a) ... Any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for which the district and division embracing the place where the action is pending.

2. The court notes that removal would be adjudged proper if even one of plaintiffs' claims "arises under" federal law. See Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 13, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) ("Appellant's complaint sets forth two 'causes of action' ... [and] if either comes within the original jurisdiction of the federal courts, removal was proper as to the whole case.").

*Inc.*, 11 F.Supp.2d 384, 389–91 (S.D.N.Y. 1998); *see also Caterpillar*, 482 U.S. at 392, 107 S.Ct. at 2425 (plaintiff, as master of his claim, "may avoid federal jurisdiction by exclusive reliance on state law"); *see also State of New Jersey v. City of Wildwood*, 22 F.Supp.2d 395, 401 (D.N.J. 1998) ("Even if the facts in plaintiff's complaint could establish a federal cause of action, the plaintiff's choice to proceed on purely state-law grounds in state court must be respected." (citations omitted)); *Campbell v. General Motors Corp.*, 19 F.Supp.2d 1260, 1271 (N.D.Ala.1998) (plaintiff, as " 'master to decide what law he will rely upon', .. has the prerogative to rely on state law alone, although both state and federal law may give him a cause of action").

■ The well-pleaded complaint rule, though, is not without exceptions, and while "[i]n most cases, claims pled under state law are to be taken at face value for purposes of evaluating jurisdiction[,]" there are "two types of situations [in which] the court may disregard the state law facade of a complaint, thereby bringing to the surface the federal claims lying beneath." *Wynn v. Philip Morris Inc.*, 51 F.Supp.2d 1232, 1238 (N.D.Ala.1999).

> The first instance in which federal jurisdiction can be exposed in a claim couched in state law is "where the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). The second circumstance in which federal question jurisdiction can be brought to the surface of a complaint drafted in the language of state law is that in which the federal claims completely preempt state law claims.

*Id.* One court has elaborated on these exceptions to (or more appropriately, one exception, and one "corollary"), as follows:

> Under these exceptions, "federal jurisdiction could be available even though plaintiff based its claim in state court on state law: (1) when it appears that

some substantial, disputed question of federal law is a necessary element of [the state claim;] ... or (2) when it appears that plaintiff's claim is really one of federal law." [*United Jersey Banks v. Parell*, 783 F.2d 360, 366 (3d Cir.1986) ] (quoting [*Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 13, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) ]). In cases falling under the first exception, the "substantial, disputed question of federal law" must be decided as part of the resolution of the state claim. The mere existence of a disputed issue of federal law is not enough, the disputed question must be "a necessary element of one of the well-pleaded state claims." Thus, the first exception does not expand federal question jurisdiction; rather, it ensures that federal question jurisdiction actually exists. *See id.* (discussing how the first exception is a reaffirmance of the traditional well-pleaded complaint rule).

The second exception, where the state claim is "really" one of federal law, is known as the "complete preemption" doctrine.... *See Goepel v. National Postal Mail Handlers Union*, 36 F.3d 306, 310–11 (3d Cir.1994). A state cause of action "is *really* a federal cause of action which may be removed to federal court if the 'federal cause of action completely preempts ... [the] state cause of action.'" *See id.* (alteration and emphasis in original) (quoting *Franchise Tax Bd.*, 463 U.S. at 24, 103 S.Ct. 2841). Complete preemption exists where Congress has evinced a powerful intent to entirely displace state causes of action. *See [Gateway 2000, Inc. v. Cyrix Corp.*, 942 F.Supp. 985, 990 (D.N.J.1996) ] (citing *Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie R.R.*, 858 F.2d 936, 941 (3d Cir.1988)). Where a plaintiff seeks to proceed in state court on state common law causes of action subject to complete preemption, the matter is removable to federal court. *See id.* In such cases, "any complaint that comes within the scope of the federal

cause of action necessarily 'arises under' federal law." *Franchise Tax Bd.,* 463 U.S. 1, 103 S.Ct. 2841; *see also Goepel,* 36 F.3d at 311; *Railway Labor Executives,* 858 F.2d at 939.

*State of New Jersey v. City of Wildwood,* 22 F.Supp.2d 395, 401 (D.N.J.1998).

As one court has aptly observed,

The principle that [plaintiff is master of his complaint] makes removal jurisdiction ... a somewhat different animal than original federal question jurisdiction—i.e., where the plaintiff files originally in federal court. When a plaintiff files in federal court, there is no clash between the principle that the plaintiff can control the complaint—and therefore, the choice between state and federal forums—and the principle that federal courts have jurisdiction over federal questions; the plaintiff, after all, by filing in a federal forum is asserting reliance upon both principles, and the only question a defendant can raise is whether plaintiff has a federal claim. On the other hand, when plaintiff files in state court and purports to only raise state law claims, for the federal court to assert jurisdiction it has to look beyond the complaint and partially recharacterize the plaintiff's claims—which places the assertion of jurisdiction directly at odds with the principle of plaintiff as master of the complaint. It is for this reason that removal jurisdiction must be viewed with a somewhat more skeptical eye; the fact that a plaintiff in one case chooses to bring a claim as a federal one and thus invoke federal jurisdiction does not mean that federal removal jurisdiction will lie in an identical case if the plaintiff chooses not to assert a federal claim.

*Eastern States Health and Welfare Fund,* 11 F.Supp.2d at 390. *See also Willy v. Coastal Corp.,* 855 F.2d 1160, 1164 (5th Cir.1988) (because removal jurisdiction raises significant federalism concerns, "we must therefore strictly construe removal jurisdiction").

In the case at bar, the plaintiffs do not deny that their allegations furnish a basis for a federal Truth in Lending claim had they chosen to plead one; but they take the position that, as was their prerogative as masters of their complaint, they deliberately chose not to assert any such claims and to instead rely exclusively on state law. Defendants argue that if plaintiffs have a viable claim for failure to disclose the nature of the credit transaction at issue, their claim necessarily arises under the Truth in Lending Act, since the Truth in Lending Act is the only possible source of the alleged duty to disclose the information which plaintiffs allege defendants failed to disclose.[3] Defendants further contend that while plaintiffs have pled their claims solely as state law claims, nevertheless, federal question jurisdiction exists because resolution of those of plaintiffs' putative "civil fraud" claims relating to defendants' alleged failure to disclose will necessarily implicate and involve federal law and specifically the Truth in Lending Act (and specifically the subpart known as the Credit Card Disclosure Act) and/or because plaintiffs' claims relating to defendants' alleged failure to disclose are completely preempted by the Credit Card Disclosure Act. The court addresses these arguments, in turn, starting with complete preemption.

*Complete Preemption:*

A claim that the state law upon which plaintiff relies in his or her com-

---

**3.** Congress enacted the Truth in Lending Act and Regulation Z to "assure a meaningful disclosure of credit terms so that customers will be able to compare more readily the various credit terms available to them and avoid the uninformed use of credit." 15 U.S.C. § 1601(a). Disclosure of information related to credit card applications and consumer credit agreements is governed by a subpart of the Truth in Lending Act known as the Fair Credit and Charge Card Disclosure Act of 1988, *see* 15 U.S.C. §§ 1610, 1637. The Credit Card Disclosure Act and Regulation Z control and prescribe the disclosure that a creditor must make in connection with an application for a credit card. 15 U.S.C. § 1637; 12 C.F.R. §§ 226.5, 226.5a.

plaint is preempted by federal law is normally a defense which will not support federal jurisdiction. *See Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392–93, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987). However, in certain circumstances, the preemptive force of a statute is so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* Once an area of state law has been completely preempted, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law. *Id.* at 393, 107 S.Ct. at 2430 (quoting *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987)). Thus, "[t]he artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim." *Rivet v. Regions Bank of Louisiana,* 522 U.S. 470, 475, 118 S.Ct. 921, 925, 139 L.Ed.2d 912 (1998).

The "complete preemption" corollary [variously known as the "complete preemption", "super preemption", or "super-duper" preemption in the ERISA arena], to the well-pleaded complaint rule flows from the principle that "a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Bd.,* 463 U.S. at 22, 103 S.Ct. at 2853. "If a court concludes that a plaintiff has 'artfully pleaded' claims in this fashion, it may uphold removal even though no federal question appears on the face of the plaintiff's complaint." *Rivet v. Regions Bank,* 522 U.S. 470, 475, 118 S.Ct. 921, 925, 139 L.Ed.2d 912 (1998). This doctrine "allows removal where federal law completely preempts a plaintiff's state-law claim," *id.,* on the theory that when the "preemptive force" of federal

law is "so powerful as to displace entirely any state cause of action," any claim is in reality "purely a creature of federal law." *Franchise Tax Bd.,* 463 U.S. at 23–24, 103 S.Ct. at 2853–54. A federal statute with this "extraordinary preemptive power" "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987); *see also Rivet,* 522 U.S. at 477, 118 S.Ct. at 926 (in these situations, federal law "transform[s] the plaintiff's state-law claims into federal claims").

*Campbell v. General Motors Corp.,* 19 F.Supp.2d at 1272.

Defendants herein assert that Congress has completely preempted state law with respect to the disclosure of credit information in consumer credit or charge card applications or solicitations. More particularly, they take the position that the Truth in Lending Act, as amended by the Fair Credit and Charge Card Disclosure Act of 1988, 15 U.S.C. § 1610, 1637, completely preempts state law claims regarding credit card disclosures so that any claim sought to be asserted by plaintiffs relating to the alleged nondisclosure of information in connection with a credit card solicitation is necessarily federal, regardless of how characterized by plaintiffs.[4] They acknowledge that not all of the areas covered by the Truth in Lending Act are subject to complete preemption by the Act. They assert, though, that the Act, and specifically § 1610(e), clearly mandates complete preemption as to those provisions of the Truth in Lending Act, as amended by the Credit Card Disclosure Act, which relate to the disclosures required in connection with credit card solicitations and applications.

The section of the Truth in Lending Act addressing the "effect of other

---

**4.** In their notice of removal, defendants also asserted that in addition to the Truth in Lending Act, certain of plaintiffs' claims, i.e., those relating to the charging of excessive interest rates, were completely preempted by the Na-

tional Banking Act. The fact is, however, plaintiffs have not alleged any claims, directly or indirectly, relating to the charging of excessive interest. Accordingly, this argument by defendants was misplaced.

laws" is § 1610, which states, in relevant part, as follows:

(a) Inconsistent provisions; procedures applicable for determination

(1) Except as provided in subsection (e) of this part, parts B and C of this subchapter do not annul, alter, or affect the laws of any State relating to the disclosure of information in connection with credit transactions, except to the extent that those laws are inconsistent with the provisions of this subchapter and then only to the extent of the inconsistency....

(b) State credit charge statutes

Except as provided in subsection 1639 of this title, this subchapter does not otherwise annul, alter or affect in any manner the meaning, scope or applicability of the laws of any State, including, but not limited to, laws relating to the types, amounts or rates of charges, or any element or elements of charges, permissible under such laws in connection with the extension or use of credit, nor does this subchapter extend the applicability of those laws to any class of persons or transactions to which they would not otherwise apply....

(e) Certain credit and charge card application and solicitation disclosure provisions

The provisions of subsection (c) of section 1632(c) and subsections (c), (d), (e), and (f) of section 1637 of this title shall supersede any provision of the law of any State relating to the disclosure of information in any credit or charge card application or solicitation which is subject to the requirements of section 1637(d) of this title, except that any State may employ or establish State laws for the purpose of enforcing the requirements of such sections.

Defendants argue that plaintiffs' suppression, or failure to disclose, claims in the case at bar arise under § 1637 and thus fall squarely within the scope of the preemption prescribed by § 1610(e), and that the preemption mandated by this subsection is not merely ordinary, but complete preemption. The court, however, cannot agree, for in the court's opinion, it is evident from the language of the provision itself that complete preemption cannot rightly be found.[5]

The Fifth Circuit has indicated that a finding of complete preemption will be warranted only where the statute at issue (1) contains a civil enforcement provision; (2) includes a specific grant of federal subject matter jurisdiction; and (3) reflects a clear manifestation of congressional intent to make preempted state-law claims removable to federal court. *See Aaron v. National Union Fire Ins. Co.*, 876 F.2d 1157, 1163–66 (5th Cir.1989); *see also Hart v. Bayer Corp.*, 199 F.3d 239, 245–46 (5th Cir.2000) (applying *Aaron* analysis); *Willy v. Coastal Corp.*, 855 F.2d 1160, 1165 (5th Cir.1988) (observing that "[i]n cases not implicating the LMRA," there must be a "'manifest congressional intent' to make a preempted state claim removable to federal court"). The particular statute at issue appears to satisfy the first two of these criteria, but not the third. The language of § 1610(e), upon which defendants rely for their complete preemption argument belies defendants' claim that Congress intended it to operate as a complete preemption statute. The plain fact is, Congress specifically reserved the prerogative of states to enforce the requirements of TILA, and thus could not have intended to completely displace state law in this area. *See also Hart v. Bayer Corp.*, 199 F.3d 239, 244 (5th Cir.2000) "[T]o establish federal question jurisdiction through the invo-

5. Defendants acknowledge that a number of courts have held that the Truth in Lending Act does not completely preempt state law. *See, e.g., Monday v. Coast to Coast Wireless Cable,; Barlow v. Evans*, 992 F.Supp. 1299, 1310–11 (M.D.Ala.1997) (finding that TILA did not preempt plaintiff's state law claim of fraud). They contend, though, that no court has considered and addressed whether the particular provisions upon which they rely, i.e., those relating to disclosures in credit card solicitations and applications, are completely preemptive. This court has found no case which has specifically addressed this particular provision cited by defendants.

cation of a federal preemption defense, the defendant must demonstrate that Congress intended not just to 'preempt a state law to some degree,' but to altogether substitute 'a federal cause of action for a state cause of action.' " (quoting *Schmeling v. NORDAM*, 97 F.3d 1336, 1341 (10th Cir.1996)); *Campbell*, 19 F.Supp.2d at 1272 ("[T]he federal statute must do more than preempt. It must provide federal civil enforcement provisions which can 'displace' the state claims."). Plaintiffs claims are thus not completely preempted.

*Substantial Federal Question*

Defendants argue additionally and/or alternatively that while plaintiffs generally are masters of their complaint, where, as here, their allegations do not enable them to state viable claims under state law for certain of their claimed damages without reliance on duties imposed upon defendants by the Truth in Lending Act, they have no state law claim at all, and their claim is instead necessarily federal. More to the point, purporting to invoke the artful pleading doctrine, defendants argue that since there is no duty under state law to disclose the true nature of the credit transaction or requiring any specific disclosures in connection with the credit transaction, the asserted basis for recovery by plaintiffs finds no support in state law but can exist, if at all, only by reference to federal law; and that therefore, plaintiffs' claims, though not denominated as such, are in substance federal and support the exercise of federal question jurisdiction.

A case "arises under" federal law so as to support federal question jurisdiction where the "suit arises under the law that creates the cause of action." *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916), and so a complaint that actually pleads a federal cause of action will support federal jurisdiction. This describes the "vast majority of cases" falling within federal district court jurisdiction. *See Franchise Tax Board*, 463

U.S. at 9, 103 S.Ct. at 2846. It has also been recognized that "a case may arise under federal law 'where the vindication of a right under state law necessarily turned on some construction of federal law.' " *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808–09, 106 S.Ct. 3229, 3232, 92 L.Ed.2d 650 (quoting *Franchise Tax Board*, 463 U.S. at 9, 103 S.Ct. at 2846); *see also Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 199, 41 S.Ct. 243, 245, 65 L.Ed. 577 (1921). "The incorporated federal question must, however, be "substantial" to support federal jurisdiction." *Merrell Dow*, 478 U.S. at 813, 106 S.Ct. at 3234; *Franchise Tax Board*, 463 U.S. at 13, 103 S.Ct. at 2848 (federal-question jurisdiction exists when "it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims").

In this case, while plaintiffs do allege in the complaint that defendants had an "obligation to inform them of the entire details concerning financing, particularly the fact that most of the monies paid from the approximately $45.00 monthly payment would go toward finance charges," plaintiffs do not specifically identify the source of this alleged duty. They do, however, specifically disclaim any federal source, stating, as they do, that their claims are based "entirely upon the common laws and statutory laws of the State of Mississippi," and that they "do not rely upon any federal statute, any federal question, and do not seek relief under any federal statute or law." *Cf. Glass Molders, Pottery, Plastics and Allied Workers Int'l Union, AFL–CIO v. Wickes Cos., Inc.*, 707 F.Supp. 174, 178 (D.N.J.1989) (no substantial federal question found where wording of plaintiffs' pleadings belied any argument that plaintiffs were placing exclusive reliance on violations of federal law as necessary predicates for proving their state law claims against the defendant).[6]

The question, then, is whether plaintiffs' claims, or any of them, although

---

**6.** In *Eastern States Health & Welfare Fund v.*

*Philip Morris, Inc.*, 11 F.Supp.2d 384, 390

pled as state law claims, must nevertheless be deemed to arise under federal law for the reason that plaintiffs' claims, while not completely preempted by federal law, are not (or may not be) viable under state law and can succeed only upon proof of a violation of federal law. In the court's opinion, the answer to this question must be no.

In *Campbell v. General Motors Corp.*, 19 F.Supp.2d 1260, 1275–76 (N.D.Ala.1998), an Alabama district court, addressing essentially the same issue, concluded that federal question jurisdiction cannot properly be found merely because a plaintiff who fails to state a viable claim for relief under state law may have available to him a viable claim for relief based on federal law where he has not elected to assert the federal claim. *See Campbell v. General Motors Corp.*, 19 F.Supp.2d 1260, 1275–76 (N.D.Ala.1998). The court stated,

> [r]egardless of the precise standard used to govern the artful pleading doctrine, the court is quite confident that the defendants' arguments here fall far short of the mark. Defendants' argument is essentially that federal questions are necessarily involved in this case because plaintiffs do not have a valid state claim for the remedy they seek. Of course, if this were the test, defendants could remove any state law case they felt did not have merit as long as an alternative federal action might be via-

ble. An exception of this type would swallow the well-pleaded complaint rule. The very foundation of that rule is that plaintiffs are entitled to choose, *for better or for worse,* to rely only on state claims. *Marcus,* 138 F.3d at 52. " '[I]f by doing so plaintiff cannot avail himself of a remedy arguably available under federal law, then so be it.' " *Anziulewicz v. Bluefield Community Hosp., Inc.,* 531 F.Supp. 49 (S.D.W.Va.1981). "Whether or not the plaintiffs, having made this choice, are entitled to prevail under state law is a matter which state courts are supremely qualified to resolve."

*Id.*

The Fifth Circuit's opinion in the recent case of *Waste Control Specialists, LLC v. Envirocare of Texas, Inc.,* 199 F.3d 781, 783 (5th Cir.2000), suggests that this is the proper way to view this issue. In *Waste Control Specialists,* the Fifth Circuit declared that "[w]ithout complete preemption, the artful pleading doctrine does not apply," *id.* at 783, and thus confirmed (or clarified) that the practice of a removal court's seeking to determine whether the real nature of a claim is federal, regardless of the plaintiff's characterization, is " 'correctly confined . . . to areas of the law preempted by federal substantive law'," *id.* at 783–84 (citing *Caterpillar, Inc.,* 482 U.S. at 397 n. 11, 107 S.Ct. 2425).[7]

(S.D.N.Y.1998), the plaintiffs claimed a right to subrogation, but did not identify the source of the claimed right. Defendants argued that because the basis of the claim, i.e., whether it was asserted under federal or state law, was not stated in the complaint, this ambiguity should be resolved in favor of federal jurisdiction either because the language of the complaint made it clear that a federal claim was being pled or because the preemption of state subrogation law by ERISA meant that the plaintiffs must have been pleading a federal claim. The court specifically rejected these arguments, "primarily in light of the plaintiffs' express disclaimer of any federal subrogation claim but also because principles of removal jurisdiction warrant resolution of ambiguity against a finding of jurisdiction, not in favor of it." *Id.* at 391. *See also Moubry v. Kreb,* 58 F.Supp.2d 1041, 1045 (D.Minn.1999) ("In the final analysis, we re-

solve all significant doubts concerning the existence of a Federal question in favor of remand."); *Glass Molders, Pottery, Plastics and Allied Workers Int'l Union, AFL–CIO v. Wickes Cos., Inc.,* 707 F.Supp. 174, 178 n. 2 (D.N.J.1989) ("Ambiguity in plaintiffs' pleadings is not fatal to their motion to remand. To the contrary, . . . " 'all doubts arising from defective, ambiguous and inartful pleadings should be resolved in favor of the retention of state court jurisdiction.' " " (citations omitted)).

7. Earlier Fifth Circuit cases, and especially *Carpenter v. Wichita Falls Independent School District,* 44 F.3d 362, 365 (5th Cir.1995), were not nearly so definitive as in *Waste Control Specialists,* and in this court's opinion, left room for (or certainly did not foreclose) an interpretation that would have permitted the

In *Waste Control Specialists*, the district court had denied the plaintiff's motion to remand upon concluding that although the plaintiff had pled solely as a state law claim, a federal claim had effectively been alleged since, even though there was no complete federal preemption, plaintiff's claim was not viable under state law and the only possible claim it had was thus a federal one. The Fifth Circuit determined that the district court had erred in concluding that the artful pleading doctrine could apply irrespective of the lack of complete preemption, *id.* at 784, and noted that consequently, "[t]he district court's decision regarding the viability of [the plaintiff's] allegations [was] one the district court had no jurisdiction to make," *id.* at 783. The court explained that in the absence of complete preemption, the plaintiff "remained the master of its complaint," *id.* at 784, and therefore,

> [a]lthough [the plaintiff] could have alleged a federal cause of action in its state petition, it did not. It filed a complaint in state court alleging wholly state claims in a non-preempted field. Its choice is entitled to respect and precluded removing the case to federal court absent circumstances not presented here. For certain, we express no opinion as to the viability of [plaintiff's] state law claims. That is for a Texas court to decide.

*Id.* at 784.

Particularly in view of the Fifth Circuit's explication of the limited role of the artful pleading doctrine in the federal question jurisdiction analysis, and the express recognition of the plaintiff's right, as master of his complaint, to avoid federal jurisdiction by electing to proceed solely under state law, even where there may be no viable claim as a matter of state law and regardless of the availability of a right to proceed based upon federal law, the court cannot conclude that plaintiffs' claims in this case, or any of them, "arise under" federal law.

It may well be that plaintiffs herein have no viable claim under state law. It may be that there is no duty under state law to disclose any of the information they allege defendants were obligation to disclose in connection with the transaction. But as the Fifth Circuit made clear in *Waste Control Specialists*, that is not for this court to say.[8] So long as plaintiffs do not rely on federal law as the source of any claimed duty of disclosure—and here they clearly do not—their claim arises under, and will

court to apply an "artful pleading"-type analysis to cases of the "substantial federal question" genre. And a number of other courts and at least one leading commentator had treated artful pleading and complete preemption as separate bases for removal, or at least had not treated the "artful pleading" doctrine as necessarily limited to cases of complete preemption. *See, e.g.,* Arthur R. Miller, *Artful Pleading: A Doctrine In Search of Definition,* 76 Tex. L.Rev. 1781 (1998). Nevertheless, it does appear that most cases that did apply the "artful pleading" doctrine outside the complete preemption context recognized that "the artful pleading approach [was] applicable only where there are specialized federal interests at stake which make jurisdiction appropriate." *Campbell,* 19 F.Supp.2d at 1275 ("federal jurisdiction based on the artful pleading doctrine does not and should not extend beyond specialized situations [where there are specialized federal interests at stake], which respond to the same principles as those involved in the complete preemption arena.").

8. *See also Wynn v. Philip Morris Inc.,* 51 F.Supp.2d 1232, 1238 n. 12 (N.D.Ala.1999), in which the court stated,

> Occasionally, a defendant will attempt removal to federal court on the basis that the plaintiff "artificially pled" his state law claims and that, in fact, the factual bases for the plaintiff's claim more readily suggest a federal, rather than state, action, or that the facts alleged support a federal cause of action, but no state cause of action. Either of these events may occur without implicating the jurisdiction of a federal district court, however. A plaintiff is permitted to deceptively plead or mis-plead his or her own claims to remain in state court, as long as no federal question is necessarily implied from the claims ... either [because of complete preemption or because a substantial, disputed question of federal law is a necessary element of the plaintiffs' state claim...]

succeed or fail, solely by reference to state law.[9]

*Conclusion*

For the foregoing reasons, the court concludes that it lacks jurisdiction over plaintiffs' complaint. Accordingly, it is ordered that plaintiffs' motion to remand is granted.

---

**9.** The court's opinions in *Jones v. Barnes*, No. 4:98CV76LN (S.D.Miss. Aug. 28, 1998), and *Keyes v. American Direct Credit, et al.*, No. 3:99CV593LN (S.D.Miss. Dec. 6, 1999), are incorrect to the extent the court therein may have suggested otherwise.